# Richmond

## P. L. FARMER, INCORPORATED v. NICHOLAS S. CIMINO, ADM'R, ETC.

January 13, 1947.

Record No. 3138.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Geo. E. Haw* and *S. Warren Bailey*, for the plaintiff in error.

*Thomas A. Williams* and *L. C. O'Connor*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Nicholas S. Cimino, administrator of the estate of Ralph Cimino, his son, instituted this action against P. L. Farmer, Incorporated, for the wrongful death of his decedent. The case was tried before a jury and a verdict was rendered for the plaintiff in the sum of $10,000, directed to be divided between Nicholas S. Cimino and Mary A. Cimino, father and mother, respectively, of the child.

On May 1, 1944, P. L. Farmer, Inc., a coal dealer, was in the course of making delivery of four tons of coal to the home of Nicholas S. Cimino. The coal was loaded upon a large dump body truck, and there accompanied this truck a smaller truck which contained a machine for conveying the coal from the large truck into the coal house. Under the ground in the back yard, and near the coal house, there had been constructed in 1941 a septic tank which was covered with a concrete slab and some seven inches of earth. This tank was approximately four feet long and three feet wide. There were also pipes leading from the house to the tank. Since 1941 the coal dealer, P. L. Farmer, Inc., had been delivering coal to Mr. Cimino and placing it in this same coal house. One of the three employees of the corporation who were making this delivery had independent knowledge of the existence of the pipes that were attached to the septic tank. The terrain over the tank and over the pipes was depressed so that it was noticeable. When she ordered the coal Mrs. Cimino told the party who received her order about the septic tank and the pipes, and at the time this delivery was being made she warned the employees of the corporation of the existence of the pipes and of the septic tank and pointed these out to them.

The machinery of the smaller truck which was to be used in unloading the coal from the larger truck failed to work and this truck was removed from the scene. Thereafter the larger truck containing four tons of coal was maneuvered by the employees so that it could be placed close to and opposite the opening into the coal house in

order that the coal might be dumped directly into it. The defendant's employees hoisted the truck body to its full height of fourteen feet and drove it backward and forward in order to get it in proper position. Naturally when the loaded body of the truck was hoisted to its full length it became top heavy and dangerous to move. The evidence discloses that this kind of truck should never be moved after it has been hoisted. In backing the truck the right wheel ran over the top of the septic tank and broke it, the wheel sinking in the tank and causing the truck to turn over on its right side.

The plaintiff's intestate, who was a boy of average intelligence, 11 years and 11 months old, was killed. His body was found under the bed of the truck some fifteen feet away from where the truck was standing in the back yard of his parents' home.

One of the employees of the defendant admitted that he saw the boy come in from school and go into the house. None of the employees saw him around the truck or in the yard after he went into the house, though there were no obstructions to prevent one's view of anyone in the back yard. The driver of the truck was not a regular but a substitute driver. He had driven this truck only once before.

■ There are numerous assignments of error. One challenges the sufficiency of the evidence to support the verdict and judgment. The facts stated clearly show that the verdict is supported by the evidence.

■ Another assignment is to the effect that there is a variance between the allegations in the notice and the proof. The record shows that the defendant failed to call for a bill of particulars. This was his right and duty if the notice of motion failed to particularize the acts of negligence. See Code, 1942 (Michie), secs. 6118 and 6091.

■■ Our attention has not been directed to any portion of the record which shows that the plaintiff in error sought to invoke the liberalizing statutes of the Code (secs. 6103, 6104 and 6250), providing for amendments when it appears

there is a variance between the allegations and the proof. Its failure to invoke these provisions in the trial court deprives it of the right to invoke them now. The defect, if it was a defect, cannot be taken advantage of here for the first time. But in any event the notice was sufficient.

One allegation in the notice of motion was that the operator of the truck "carelessly, recklessly, negligently, and wrongfully ran, operated, and backed one of its said trucks, without proper care and caution; without keeping a proper lookout; without having the same under proper control, * * * and did manage and maintain the truck in an unwieldy and dangerous condition in backing the same, and did back, run, and operate the same with the dump body raised to extreme height, into a certain cesspool, * * * " so that it turned over, killing the plaintiff's intestate.

The substance of the allegations in the notice is that the defendant's servants negligently placed the heavy truck, with the dump body hoisted to its full height of fourteen feet, on the top of the septic tank and that the top of the tank was broken in, causing the truck to turn over and the body to fall on the boy and kill him. This was a compliance with Code, sec. 6046. The assignment of error is without merit.

At the trial the court refused to grant an instruction dealing with the alleged contributory negligence of the plaintiff's decedent. This action of the court is assigned as error.

In Virginia a child between seven and fourteen years of age is presumed to be incapable of negligence. This presumption prevails unless overcome by sufficient proof to the contrary. The record in this case contains no proof to the contrary, and the presumption therefore is not overcome. No one saw the child immediately before he was killed. Apparently he was not standing dangerously near the truck if it had been operated with due care. All that we know is that his body was found under the bed of the truck fifteen feet away. The burden was upon the defendant to overcome the presumption and to show by sufficient evidence the contributory negligence of the child.

This it failed to do. There being no evidence of his contributory negligence the trial court was correct in refusing to instruct the jury on that point.

It is contended that Mrs. Cimino was guilty of contributory negligence in allowing the boy to go out in the yard while the truck was being unloaded, and that she is not entitled to any part of the recovery. The defendant requested no instruction dealing with her contributory negligence and did not raise this point until after the verdict of the jury.

Mrs. Cimino had warned the employees of the defendant of the location of the septic tank and the pipes. She had no reason to believe that they would disregard her warning and drive on the septic tank. Of course, there is nothing inherently dangerous in unloading a truck of coal under ordinary circumstances, and we do not think that she was bound to keep her son in the house while the truck was being unloaded. For this reason we think there is no merit in this point.

It is contended that the accident and resultant injury could not have been reasonably foreseen, therefore no liability attaches to the defendant.

Instructions "C" and "F" properly informed the jury in regard to the foreseeableness of the accident. This was an issue for the jury under all of the facts and circumstances and they have resolved it against the defendant. This was their province. It is not necessary as a prerequisite to liability that a defendant foresee the particular injury. One of the employees had seen the boy go into the house. It is quite natural for a boy to look at an operation of this kind. It is to be expected. With a clear, unobstructed view of the entire yard there is no reason shown why the servants of the defendant failed to see the boy. By the exercise of reasonable care they should have seen him and warned him not to get too close to the truck with its hoisted body moving back and forth, an operation admitted by all to be unsafe and dangerous. These employees were bound to have known that the truck was top heavy and would likely turn over from the movement even if it had not broken through the

septic tank. Under such circumstances the foreseeableness of the accident and the resultant death of plaintiff's decedent was at least for the jury.

Instruction No. 1 was the subject of objection by the defendant. It reads as follows:

"The court instructs the jury that if you believe from the evidence in this case that the defendant undertook to make a delivery of coal to the premises of the plaintiff that thereupon it became and was the duty of the defendant to furnish and supply a competent operator of the truck so to do. And the court further instructs the jury that if you believe from the evidence in this case that the defendant failed in this duty, and as a proximate result thereof the truck turned over and the plaintiff's decedent was killed then your verdict must be for the plaintiff."

The objection was that there was no evidence tending to show that the driver was incompetent or that the truck turned over as a result of any incompetence on his part.

The question raised here is the most serious one in the case. The defendant, however, was permitted to prove by the vice president and manager that the driver was competent; that he was better than the average; that he was reliable and permitted to collect for as well as to deliver coal; and that he was instructed never to move the truck with the body hoisted. No objection was interposed to this line of testimony. If objection had been made no doubt the testimony would not have been admitted because it had no bearing upon whether or not the death of the plaintiff's decedent was the result of the negligence of the servants of the defendant. The defendant was liable, if at all, for the acts of its servants under the doctrine of *respondeat superior*. If the driver of the truck was negligent on the occasion and his negligence was the proximate cause of the death of the plaintiff's decedent it would have been immaterial whether he was competent or incompetent. On the other hand, if he was not negligent at the time, the defendant would not be liable regardless of the driver's incompetency, if he were incompetent. The sole issue in this case was whether the

servants of the defendant were guilty of negligence at the time of the accident. *Southern Ry. Co.* v. *Mason,* 119 Va. 256, at page 264, 89 S. E. 225, and *Virginia Ry., etc., Co.* v. *Davidson,* 119 Va. 313, at page 324, 89 S. E. 229.

From what has been said it follows that instruction No. 1 was not a proper instruction in this case and the trial court should have refused it.

Of course, in actions by a servant against the master, another principle applies. There it is the duty of the master to use reasonable care to secure competent co-employees. Shearman & Redfield on Negligence, Rev. Ed., Vol. 2, sec. 190.

In *Aronovitch* v. *Ayres,* 169 Va. 308, at page 322, 193 S. E. 524, this court, speaking through Mr. Justice Holt, (now Chief Justice), said:

"However, when as here, the doctrine of fellow-servant is invoked to escape liability, a different principle applies. One must not knowingly subject his servants to the hazards of incompetent or careless associates. In such a case, the fact that injury was suffered at the hands of a fellow-servant, may be no defense at all.

"Among the duties which the master personally owes to his servants is that of using ordinary care to select competent servants, * * * "

We are of opinion, however, that while instruction No. 1 was erroneous, it did not constitute reversible error in this case. It appears that the jury was properly instructed in other respects. The negligence of the servants of the defendant has been clearly shown and the jury has rendered a proper verdict upon the evidence. From the whole record, we are convinced that the erroneous instruction did not injuriously affect the interests of the defendant. Upon the whole, the parties have had a fair trial on the merits and substantial justice has been attained.

The judgment is affirmed.

*Affirmed.*

Spratley, J., dissenting.

It is with great reluctance that I offer my views of this case, because of the respect I have for the judgment of my brethren. However, having formed an opinion different from them, which brings me to an opposite result, I do not feel free to remain silent.

The doctrine of harmless error is favored by this court, is firmly embodied in our jurisdiction, and is often applied to avoid mere irregularities in form or technical points of law in our effort to obtain substantial justice. It is thus applicable when we can say it appears clearly that the error did not affect the merits of the case, nor in anywise prejudice the party appealing, and that, upon the whole case, no other proper verdict could have been rendered.

In this case, the court gave fifteen instructions to the jury. They covered every phase of the case and an issue not properly involved. The evidence bearing on the question of the negligence of the defendant's agent was directly in conflict. The jury, upon the conflicting evidence, might have found the defendant's agent not guilty of negligence, if they had believed the evidence of the defendant. The nature of the case was such as to make a strong appeal to the sympathies of the normal man in favor of the plaintiff. Thus, it would be natural to expect the jury to look for some ground upon which to peg a verdict for the injured party. This situation made it necessary that the instructions correctly state the law applicable to the evidence bearing upon the issues involved.

The majority opinion very properly holds that instruction No. 1 was erroneous, both because it was not relevant to the issue involved and there was no evidence upon which to base it.

The trial court, in giving the instruction over the objection of the defendant, manifestly thought that the jury should give consideration to the circumstances therein recited, circumstances irrelevant to the issue. Plaintiff's counsel, both in his argument in this court and in his brief,

stoutly contended that the jury properly found that the defendant failed to employ a competent operator of the truck. Evidence that the "driver of the truck had no chauffeur's license, and was merely a helper on the truck," operating it in the absence of his brother on the day in question, was relied on.

The introduction of this evidence emphasizes the error in granting the instruction. The instruction emphasizes the duty of the jury to give it consideration. It furnished the jury an improper basis for a verdict against the defendant. If the trial judge and plaintiff's counsel believed that this evidence had a bearing on the merits of the case, how can we say that the jury, composed of laymen, escaped such a view?

Every man is entitled to a fair trial. A fair trial is dependent upon a proper application of the law to the facts of his case. In a great number of cases, we have said that error will be presumed prejudicial unless it plainly appears that it could not have affected the result. *Norfolk Ry., etc., Co.* v. *Corletto*, 100 Va. 355, 41 S. E. 740; Volume 1, Digest of Virginia and West Virginia Reports (Michie), Appeal and Error, section 265, subsection 3, and cases cited.

See also, *Virginia Coal, etc., Co.* v. *Ison*, 114 Va. 144, 75 S. E. 782; *Realty Co.* v. *Burcum*, 129 Va. 466, 106 S. E. 375.

"All error is presumed to be prejudicial." *Wolfe* v. *Commonwealth*, 167 Va. 486, 489, 189 S. E. 320.

"There is no presumption that an error is harmless." *Irvine* v. *Carr*, 163 Va. 662, 668, 177 S. E. 208.

A correct statement of the law applicable to the case, when the law is stated, is essential to a fair trial. *Limbaugh* v. *Commonwealth*, 149 Va. 383, 140 S. E. 133.

In *Norfolk Ry., etc., Co.* v. *Corletto, supra*, Judge John A. Buchanan said:

"It has been repeatedly held that it is error to give an instruction when there is no evidence tending to prove the facts upon which the instruction is based. The reason for this is that the tendency of such instructions is to mislead

the jury, by withdrawing their attention from the legitimate points involved in the issue. Juries are sufficiently prone to indulge in conjectures, without having possible facts not in evidence suggested for their consideration. *Kimball* v. *Borden*, 95 Va. 203, 207, 28 S. E. 207, and authorities cited. It is also well settled that if a misdirection or other mistake of the court appear in the record it must be presumed that it affected the verdict of the jury, and is therefore ground for which the judgment must be reversed, unless it plainly appears from the whole record that the error did not affect, and could not have affected, their verdict. *Kimball* v. *Borden, supra,* and authorities cited; *Richmond Traction Co.* v. *Hildebrand,* 99 Va. [48], 56, 34 S. E. 888."

The defendant in error not only failed to affirmatively show that the error was not prejudicial, but contended that this was no error. But beyond this, for the reasons stated, I am of the view that the erroneous instruction tended to mislead the jury. It is impossible to say upon what grounds the jury based its verdict. *Green* v. *Ruffin,* 141 Va. 628, 125 S. E. 742, 127 S. E. 486.

The judgment should be reversed and the case remanded for a new trial, under proper instructions.