# Richmond

ESTELLE FERGUSON ALEXANDER v. WILLIAM OLIVER KUYKENDALL.

March 12, 1951.

Record No. 3752.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Louis B. Fine,* for the plaintiff in error.

*Breeden & Hoffman* and *Michael B. Wagenheim,* for the defendant in error.

HUDGINS, C. J., delivered the opinion of the court.

Estelle Ferguson Alexander instituted this action against William Oliver Kuykendall to recover damages which she alleged resulted from an invalid marriage contract which he, by false representations, induced her to enter into with him.

The defendant demurred to the motion for judgment on two grounds: (1) "The laws of the State of Virginia do not permit or contemplate an action of the nature as stated;" and (2) even if such an action were permitted in this jurisdiction, the facts alleged are not sufficient to sustain the action. The trial court sustained the demurrer, but did not state upon which ground it based its decision.

The only question of substantive law involved is, whether or not a woman may maintain an action against a man, who, by misrepresentation, fraud and deceit, induced her to enter into what she thought was a valid marriage, but which in fact was void.

This court has never passed upon the question, and there is no Virginia statute authorizing or prohibiting such an action. However, the right of a party so defrauded to recover is authorized in most jurisdictions upon one or the other of two theories.

In the following jurisdictions it has been held that a woman who, in good faith, relying upon the false representations of a man, contracts what she believes to be a valid marriage, but which is in fact void, and thereafter lives with him until she ascertains the fraud that has been perpetrated upon her, may recover upon an implied contract the reasonable value of services rendered, less the value of support and maintenance furnished her by him. Recovery in such instances is based on the theory that the supposed husband, or his estate, has been enriched at her expense, and that equity demands she shall be made whole,—that is, that he should reimburse her for the actual money value of the services to him. *Fox's Estate,* 178 Wis. 369, 190 N. W. 90, 31 A. L. R. 420; *Sanders* v. *Ragan,* 172 N. C. 612, 90 S. E. 777, L. R. A. 1917B, 681; *Sanguinetti* v. *Sanguinetti,* 9 Cal. (2d) 95, 69 P. (2d) 845, 111 A. L. R. 342; *Whitney* v. *Whitney,* 194 Okla. 361, 151 P. (2d) 583; 35 Am. Jur. Marriage, sec. 246, p. 345.

█ The reasoning in these cases appears to us to be unsound. As was said in *Cooper* v. *Cooper,* 147 Mass. 370, 372, 17 N. E. 892, "the fact that the plaintiff was led by mistake or deceit into assuming the relation of a wife has no tendency to show that she did not act in that relation; and the fact that she believed herself to be a wife excludes the inference that the society and assistance of a wife which she gave to her supposed husband were for hire. It shows that her intention in keeping his house was to act as a wife and mistress of a family, and not as a hired servant. There was clearly no obligation to pay wages arising from contract; and the plaintiff's case is rested on the ground that there was an obligation or duty imposed by law, from which the law raises a promise to pay money, upon which the action can be sustained. * * * Labor in housekeeping was a small incident to a great wrong, and the intestate owed no duty, and had no right to single that out and offer payment for it alone; and the offer to do so might well have been deemed an aggravation of the injury to the plaintiff. * * * The obligation to make recompense for the injury done by the tort was imposed by law, and could be enforced only in an action of tort;

it was not a debt or duty upon which the law raised a promise which would support an action of contract."

The authorities which allow a recovery on the theory of implied contract seem to us to place the marriage relation on too much of a commercial basis, and to treat the marital relation as any other business association, whereby each expects to obtain material advantage from the marriage. This is not, in our opinion, the true concept of the relation.

Marriage, as defined by Mr. Justice Story, in his Conflict of Laws, sec. 108, is "more than a mere contract. It is rather to be deemed an institution of society founded upon the consent and contract of the parties, and in this view it has more peculiarities in its natural character, operation, and extent of obligation different from what belongs to ordinary contracts." "Unlike other contracts, it is one instituted by God himself, and has its foundation in the law of nature. It is the parent, not the child, of civil society." 1 Fras. Dom. Rel. 87.

It is seldom that parties in their pre-marital negotiations conduct themselves in the same manner as parties negotiating a business deal. As Dickens says "The confiding eye of affection is not the distrustful eye of business." Not business or money, but wedlock is what the parties contemplate. They are, or should be, motivated by love and affection to form a mutual and voluntary compact to live together as husband and wife, until separated by death, for the purpose of mutual happiness, establishing a family, the continuance of the race, the propagation of children, and the general good of society.

While no particular form of marriage ceremony is required by civil law, there is a form prescribed by certain denominations, the substance of which is used by a majority of ministers authorized by statute to perform marriage ceremonies. It is stated in this form that marriage is commended of St. Paul to be honorable among all men; and therefore is not by any to be entered into unadvisedly or lightly; but reverently, discreetly, advisedly, soberly, and in the fear of God, and if either of the contracting parties know of any impediment "why ye may not be lawfully joined together in Matrimony, ye do now confess it. For be ye well assured, that if any persons are joined together otherwise than as God's Word doth allow, their marriage is not lawful."

The great body of organized society so regards the marital

relation. If third parties illegally invade certain marital rights, damages may be recovered therefor in an action based on 'criminal conversation. If such parties alienate the affections of one spouse from another the injured spouse may recover compensation therefor.. If one innocent party is induced by fraud and deceit of the other party to contract a void marriage, such party has suffered a real and serious injury. A woman so induced has changed her status from that of a virtuous single woman and has been forced to live meretriciously with defendant, to her humiliation, disgrace and mental anguish. Such an injury cannot be fully compensated in dollars and cents. To deny recovery to a party so wronged and to permit a recovery for criminal conversation, or alienation of affections, is illogical and unreasonable.

█ We are in accord with the cases cited below which follow this line of reasoning and hold that an innocent woman induced by fraud and deceit to contract a void marriage with defendant, and subsequently lives with him, performing the normal duties of a wife, is entitled to recover damages in an action for fraud and deceit. *Jekshewitz* v. *Groswald,* 265 Mass. 413, 164 N. E. 609, 62 A. L. R. 525; *Morrill* v. *Palmer,* 68 Vt. 1, 33 A. 829, 33 L. R. A. 411; 2 Schouler on Marriage, Divorce, Separation and Domestic Relations, 6th Ed., sec. 1146, p. 1406; *Amsterdam* v. *Amsterdam,* 56 N. Y. S. (2d) 19; *Cohen* v. *Kahn,* 263 App. Div. 728, 30 N. Y. S. (2d) 875; *Leventhal* v. *Liberman,* 262 N. Y. 209, 186 N. E. 675, 88 A. L. R. 782 (In this case the defrauded wife was permitted to recover in an action against the father and sister of the supposed husband); 35 Am. Jur., Marriage, sec. 242, p. 343.

It was held in *Keister* v. *Keister,* 123 Va. 157, 177, 96 S. E. 315, 1 A. L. R. 439, that Code, sec. 2286a of 1904 (now sec. 55-36 of the 1950 Code) did not change the common law rule prohibiting one spouse from suing the other in a tort action. Judge Burks, in his concurring opinion, stated: ''The husband may not present a bill against his wife for board and clothing, nor the wife present to her husband a bill for presiding over the household. The law will not imply a contract to pay such bills. By the act of marriage, the parties thereto establish a unit of society, which automatically carries with it primary obligations, which cannot be destroyed without reducing that honorable estate to mere licensed cohabitation.''

Mr. Justice Spratley, speaking for the court in *Toler* v. *Oakwood Smokeless Coal Corp.*, 173 Va. 425, 4 S. E. (2d) 364, 127 A. L. R. 430, emphasizes the necessity to observe the clear distinction between marriages made voidable and those declared void. Quoting from Keezer on Marriage and Divorce, he said: " 'A void marriage confers no legal rights, and, when it is determined that the marriage is void, it is as if no marriage had ever been performed. * * * A voidable marriage differs from a void marriage in that it may be afterwards ratified by the parties and become valid and usually is treated as a valid marriage until it is decreed void.' "

A void marriage is a mere nullity and its validity may be impeached in any court, whether the question arises directly or indirectly, and whether the parties be living or dead. This is not true of a voidable marriage. However, no facts are alleged in the motion for judgment in this case from which it can be determined whether the alleged marriage was void or voidable.

The other question involved is whether the allegations in the motion for judgment are sufficient to sustain an action based on misrepresentation and fraud.

The pertinent allegations are, "On the 8th day of March, 1944, defendant *fraudulently* went through a marriage ceremony with plaintiff and represented to * * * plaintiff that said marriage was valid when said defendant well knew that said marriage was *fraudulent,* * * * and that by virtue of said representations to * * * plaintiff that said marriage was valid * * * plaintiff married the defendant, and that said marrige was *subsequently held to be* invalid, * * * and as a result of said fraudulent marriage, * * * plaintiff was caused to be embarrassed, humiliated," etc. (Italics supplied). It is also alleged that a child was born to the parties and that plaintiff lost a substantial position as Chief Supervisor at the Norfolk Navy Yard, to her damage in the sum of $12,000.

The grounds of demurrer pertinent to the question now under consideration are (1) the one count in the motion for judgment contains allegations appropriate to an action *ex contractu* and to an action *ex delicto;* (2) it is not alleged that the plaintiff was innocent or that she did not know of the invalidity of the alleged marriage at the time it was consummated; and (3) no allegations of fact are set out in the motion for judgment, but mere conclusions.

The attorney for plaintiff, in the oral argument, requested the court to treat as surplusage the allegations in his motion appropriate to an action *ex contractu,* and to consider the case as a tort action, based on fraud and deceit. We have acted on that request in the foregoing discussion.

"One of the fundamental principles in regard to fraudulent representations is that the false statement must be believed and relied on by the party to whom it is addressed, otherwise, however false or fraudulent the intent, the false statement does not constitute any ground for the rescission of a contract or action for damages." 8 Michie's Jur., Fraud and Deceit, sec. 22, p. 713. (Numerous Virginia and West Virginia cases are cited by the author to support the text).

The plaintiff does not expressly allege that she believed or relied on the representations, but she does allege that, "by virtue of said representations to * * * plaintiff that said marriage was valid * * * plaintiff married the defendant." The words "by virtue of," are used in the sense of "because," or "relied upon." The sentence is not clear, positive and certain as allegations in all pleadings should be. However, the unmistakable impression conveyed is that defendant made false representations to plaintiff; that plaintiff believed the false representations and acted thereon to her detriment.

Plaintiff's motion is defective. It is even more defective than the bill drawn by the same attorney which we characterized in *Binkley* v. *Parker,* 190 Va. 380, 57 S. E. (2d) 106, as a good example of how such a pleading should not be drawn. Defective as it is, it informs defendant of the true nature, though not the particulars, of plaintiff's claim.

Dealing with a similar situation, Judge Burks, in *Shreck* v. *Virginia Hot Springs Co.,* 140 Va. 429, 125 S. E. 316, said: " * * * the notice did note a cause of action, though somewhat imperfectly, and that, instead of sustaining the demurrer on that ground, the trial court should have overruled the demurrer, and, if desired by the defendant, should have required the plaintiff to file a bill of particulars setting forth more specifically and particularly the grounds of his claim. * * * "

The substance of this and other decisions of this court is that even though a declaration or motion for judgment may be imperfect, if it is so drafted that the defendant cannot mistake the true nature of the claim, the trial court should overrule

the demurrer, and, if defendant desires more definite information, or a more specific statement of the grounds of the complaint, he should request the court to require plaintiff to file a bill of particulars. See *Economic Water Heating Corp.* v. *Dillon Supply Co.,* 156 Va. 597, 159 S. E. 78; *Orndorff v. Howell,* 181 Va. 383, 25 S. E. (2d) 327; *Farmer, Inc. v. Cimino,* 185 Va. 965, 41 S. E. (2d) 1, and *Miller* v. *Johnson, Inc.,* 191 Va. 768, 62 S. E. (2d) 870.

The judgment of the trial court will be reversed and the case remanded, with leave to plaintiff either to amend her notice of motion or file a bill of particulars, or both. If plaintiff fails so to amplify her pleading, defendant may proceed under Sec. 3:18 of the Rules of Court.

*Reversed and remanded.*