# COURT OF APPEALS OF VIRGINIA

___

**Record No. 0061-25-2**

___

VIRGINIA W. BOZARTH, ADMINISTRATOR
FOR THE ESTATE OF CAROL WOOD LANTZ
v.
BILLY GENE SHELTON, SR.

___

Present: Chief Judge Decker, Judges Ortiz and Callins

Argued at Richmond, Virginia

Opinion Issued April 21, 2026

___

**FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY**
Jayne A. Pemberton, Judge[1]

Spencer C. Patterson (W. Joseph Owen, III; Owen & Owens PLC, on brief), for appellant.

No brief or argument for appellee.

___

**PUBLISHED OPINION BY**
**JUDGE DANIEL E. ORTIZ**

When a spouse in a voidable marriage dies, the marriage terminates and leaves nothing to adjudicate after their death, even on collateral attack. As a result, it was proper for the trial court to dismiss the annulment action brought by Virginia W. Bozarth as administrator of her sister Carol Wood Lantz's estate. Lantz's voidable marriage to Billy Gene Shelton, Sr. was not decreed void during her lifetime and was therefore valid until her death. We agree with the court below in its holding that it lacked subject matter jurisdiction in Bozarth's annulment action. Accordingly, we affirm the judgment.

___

[1] The Hon. David E. Johnson presided over the hearing and issued the opinion letter, and the Hon. Jayne A. Pemberton issued the final order.

BACKGROUND[2]

Lantz was diagnosed with senile dementia in 2018. In 2021, Bozarth moved in with her sister and became Lantz's full-time caregiver, assisting with her sister's finances, transportation, and other daily tasks. Lantz was unable to drive so Shelton, a long-time family friend, often drove Lantz to run errands. During one such outing in January 2023, Lantz and Shelton had a marriage ceremony and obtained a marriage certificate. Shelton informed Bozarth of the marriage the next day. Bozarth noticed that the marriage license misspelled the names of Lantz's parents and listed Lantz's marital status as widowed instead of divorced.

After the marriage ceremony, Lantz continued to live with Bozarth. Lantz's health deteriorated, and she eventually entered hospice care. When Lantz died in 2024, Bozarth qualified as the administrator of her estate. Bozarth sued to annul Lantz and Shelton's marriage, asserting that Lantz lacked the mental capacity to consent to the marriage when it was solemnized.

After reviewing the claim, the circuit court asked Bozarth to submit supplemental briefing addressing whether she had standing to bring the action. Bozarth submitted a supplemental brief, arguing that she had standing as administrator of Lantz's estate. At a subsequent hearing, Bozarth presented evidence on the merits of the annulment action. At the close of Bozarth's evidence, the circuit court asked her to address whether it had subject matter jurisdiction to annul the marriage after Lantz's death. Bozarth argued that because Lantz was mentally incapacitated when the marriage ceremony occurred, the marriage "was void by operation of law at that moment" and the circuit court had jurisdiction to declare the marriage null and void despite Lantz's death.

---

[2] Shelton did not participate in any of the proceedings below and has not appeared before this Court. Despite this, we still recite the facts in the light most favorable to Shelton as the prevailing party below. *Commonwealth v. Squire*, 278 Va. 746, 749 (2009). "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Va. State Bar ex rel. Sixth Dist. Comm.*, 302 Va. 234, 240 n.2 (2023).

After considering the evidence and argument, the circuit court dismissed Bozarth's annulment suit. The circuit court concluded that marriages involving a party who is mentally incapable of consenting are voidable, not void ab initio. It relied upon Code § 20-45.1(B), which provides that marriages involving a party lacking the mental capacity to consent to the marriage when it is solemnized "shall be void from the time they shall be so declared by a decree of divorce or nullity." The circuit court reasoned that unlike a void marriage, which is a "legal nullity," a *voidable* marriage to a mentally incapacitated party cannot be collaterally attacked by a third party after the death of one of the spouses. Accordingly, the circuit court held that it lacked subject matter jurisdiction to annul the marriage after Lantz's death and that Bozarth lacked standing to impeach the validity of Lantz's marriage in an annulment action. Bozarth appeals.

ANALYSIS

We review questions of a circuit court's jurisdiction de novo. *Johnson v. Johnson*, 72 Va. App. 771, 777 (2021). "Subject matter jurisdiction defines a court's 'power to adjudicate a case.'" *Hannah v. Commonwealth*, 303 Va. 109, 123 (2024) (quoting *Pure Presbyterian Church of Washington v. Grace of God Presbyterian Church*, 296 Va. 42, 49 (2018)). It "can only be acquired by virtue of the Constitution or of some statute. Neither the consent of the parties, nor waiver, nor acquiescence can confer it." *Spanos v. Taylor*, 76 Va. App. 810, 818 (2023) (quoting *Pure Presbyterian Church*, 296 Va. at 49).

"All marriages solemnized when either of the parties lacked capacity to consent to the marriage at the time the marriage was solemnized, because of mental incapacity or infirmity, shall be void from the time they shall be so declared by a decree of divorce or nullity." Code § 20-45.1(B). "Adhering closely to statutory texts, Virginia courts presume that the legislature chose, with care, the words it used when it enacted the relevant statute." *Cornell v. Benedict*, 301 Va. 342, 349 (2022) (quoting *Tvardek v. Powhatan Vill. Homeowners Ass'n, Inc.*, 291 Va. 269, 277

(2016)). "[W]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Heald v. Rappahannock Elec. Coop.*, 80 Va. App. 53, 68 (2024) (quoting *City of Hampton v. Williamson*, 302 Va. 325, 333 (2023)).

Bozarth argues that marriages that contravene Code § 20-45.1(B) are void ab initio, rather than voidable. She contends that Lantz never ratified her marriage to Shelton because of her mental incapacity. We disagree because long-settled precedent holds to the contrary.

Nearly a century ago, the Supreme Court interpreted a predecessor statute to Code § 20-45.1(B), which declared marriages involving an "insane" party to "be void from the time they shall be so declared by a decree of divorce or nullity." *Cornwall v. Cornwall*, 160 Va. 183, 190 (1933); *see also Counts v. Counts*, 161 Va. 768, 774 (1934) (quoting the former statute in its entirety). The Court held that the statute rendered such marriages "voidable and not void." *Cornwall*, 160 Va. at 191; *see also Toler v. Oakwood Smokeless Coal Corp.*, 173 Va. 425, 434-35 (1939) (same). Code § 20-45.1(B) uses the same operative language: it provides that marriages of mentally incapacitated persons are "void from the time they shall be *so declared* by a decree of divorce or nullity." (Emphasis added).

"Where a statute has been construed by the courts, and is then re-enacted by the legislature, the construction given to it is presumed to be sanctioned by the legislature." *Jones v. State Farm Mut. Auto. Ins. Co.*, 268 Va. 396, 401 (2004) (quoting *Miller v. Commonwealth*, 180 Va. 36, 43 (1942)). "When 'the General Assembly acts in an area in which one of its appellate courts has already spoken, it is presumed to know the law as the court has stated it and to acquiesce therein.'" *Townes v. Va. State Bd. of Elections*, 299 Va. 34, 49 (2020) (quoting *Weathers v. Commonwealth*, 262 Va. 803, 805 (2001)). The legislature's recodification of the language in *Cornwall*, which has remained binding precedent for nearly 100 years, demonstrates its intent that such marriages are "voidable and not void." *Cornwall*, 160 Va. at 191.

- 4 -

Additionally, it is well-established that declaring an act void ab initio is "a remedy the General Assembly usually makes quite clear when it intends the courts to award it." *Levick v. MacDougall*, 294 Va. 283, 297 (2017). It has done so when addressing marriages that are void. For example, bigamous marriages are "absolutely void." Code § 20-43. Similarly, Code § 20-45.1(A) declares bigamous and incestuous marriages "void," without reference to an annulment or divorce. The additional requirement in § 20-45.1(B) that a marriage be declared void "by a decree of divorce or nullity" demonstrates that marriages of mentally incapacitated individuals are not void ab initio. "[W]hen the General Assembly includes specific language in one section of a statute[] but omits that language from another section of the statute, we must presume that the exclusion of the language was intentional." *Stoots v. Marion Life Saving Crew, Inc.*, 300 Va. 354, 365 (2021) (quoting *Halifax Corp. v. First Union Nat. Bank*, 262 Va. 91, 100 (2001)). If the legislature had intended a marriage by a mentally incapacitated person to be "absolutely" void, it would have said so—just as it has for bigamous and incestuous marriages. Code §§ 20-43, 20-45.1(A).

Resisting this conclusion, Bozarth correctly asserts that Code § 20-13 requires all marriages in Virginia to be "under a license and solemnized." She argues that the marriage between Lantz and Shelton was never solemnized because Lantz "did not have the mental capacity to express" her sincere intent to marry. She also argues that the incorrect information on the marriage license evidenced Lantz's "defective mental state at the time of issuance." But Code § 20-13 is satisfied "[a]s long as . . . consent to be married is presently expressed to and, at the same time, received by the officiant when the celebrants possess a marriage license." *Levick*, 294 Va. at 297 (first alteration in original). Here, Bozarth does not dispute that a marriage ceremony occurred or that Lantz expressed her consent to the marriage. She argues instead that Lantz lacked the mental capacity to appreciate her expression of intent. This ground, even if

true, would not render the marriage void ab initio: under the plain language of the Code, a marriage between parties who "lacked capacity to consent to the marriage *at the time the marriage was solemnized*" is merely voidable. Code § 20-45.1(B) (emphasis added).

Having determined Lantz's alleged mental incapacity made the marriage merely voidable, the circuit court correctly held that it lacked subject matter jurisdiction over the annulment suit after Lantz's death.[3] A void ab initio marriage "may be impeached in any court, whether the question arises directly or indirectly, and whether the parties be living or dead." *Marblex Design Int'l, Inc. v. Stevens*, 54 Va. App. 299, 307 (2009) (quoting *Alexander v. Kuykendall*, 192 Va. 8, 13 (1951)). But the same "is not true of a voidable marriage." *Id.* (quoting *Alexander*, 192 Va. at 13).

In Virginia, circuit courts have "jurisdiction of suits for annulling or affirming marriage and for divorces." Code § 20-96. A spouse's death, however, "fully determines the marital status and therefore leaves nothing for the courts to adjudicate, as the marriage has already ended." *Johnson*, 72 Va. App. at 778. A circuit court "has no statutory jurisdiction to terminate a non-existent marriage." *Id.* at 779. Thus, Virginia courts consistently have held that the death of one of the spouses extinguishes the circuit court's jurisdiction to enter a decree terminating the marriage. *Id.* at 777-80; *see, e.g.*, *Brown v. Brown*, 69 Va. App. 462, 471 (2018); *Sprouse v. Griffin*, 250 Va. 46, 50 (1995).

Bozarth asked the circuit court to adjudicate the status of a marriage that had ended. Although the validity of a *void* marriage can be challenged after a spouse's death, Bozarth's

---

[3] This Court acknowledges the likely practical consequences of this decision, especially in circumstances where the mentally incapacitated person's fiduciary/loved one did not know about—and therefore could not challenge—the mentally incapacitated person's marriage before her death. However, we recognize that "[o]nce the legislature has acted, the role of the judiciary 'is the narrow one of determining what [the legislature] meant by the words it used in the statute.'" *Dionne v. Southeast Foam Converting & Packaging, Inc.*, 240 Va. 297, 304 (1990) (second alteration in original) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 318 (1980)).

alleged grounds for annulment rendered Lantz's marriage to Shelton merely voidable. Upon Lantz's death, her marriage to Shelton ended, extinguishing the circuit court's subject matter jurisdiction to dissolve it. *See Johnson*, 72 Va. App. at 779. Thus, the circuit court correctly concluded that it lacked jurisdiction over Bozarth's annulment suit.[4]

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[4] Bozarth also assigns error to the circuit court's determination that she lacked standing as administrator of Lantz's estate to bring the annulment suit. Having affirmed the circuit court's dismissal of the annulment suit based on its lack of subject matter jurisdiction, we do not address the standing issue. The "doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Heald*, 80 Va. App. at 72 n.7 (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)).