Present: All the Justices

JOHN M. FLORA, ET AL.

v. Record No. 001887  OPINION BY JUSTICE CYNTHIA D. KINSER
                                              June 8, 2001
DAVID SHULMISTER, M.D., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Charles E. Poston, Judge


In this appeal, we decide the question whether a trial court abused its discretion by imposing monetary sanctions because a litigant's counsel failed to produce an autopsy report in response to a request for production of documents.  Because we conclude that the attorney, after reasonable inquiry, could have formed a reasonable belief, grounded in fact and warranted under existing law, that the report contained facts known and an opinion held by an expert and was, thus, discoverable only pursuant to Rule 4:1(b)(4), we will reverse the judgment of the circuit court awarding the sanctions.

FACTS AND MATERIAL PROCEEDINGS

The law firm of Harlan & Flora, P.C. (the Firm), was retained to file a medical malpractice/wrongful death action on behalf of J. Riley Johnson, Administrator of the Estate of Chester A. Thompson, deceased, against David Shulmister, M.D., Phyllis A. Bragg, M.D., Emergency Physicians of Tidewater (EPT), and Sentara

Hospitals/Norfolk, t/a Sentara Leigh Hospital.  In a motion

for judgment that listed the plaintiff's counsel of record

as John M. Flora and Thomas J. Harlan, Jr., the plaintiff

alleged that the decedent died of acute coronary

insufficiency and that the defendants negligently treated

and discharged the decedent when they knew, or reasonably

should have known, that the decedent was in need of further

medical care.[1]

Approximately a month after the plaintiff filed the

motion for judgment, Dr. Shulmister, Dr. Bragg, and EPT[2]

served the plaintiff with the following request for

production of documents:

> Any and all documents, as defined herein, in the
> possession, custody or control or otherwise available
> to you or your representative, which relate or in any
> way pertain to:
>
> 1. All medical reports and records, including
> radiology films, pathology slides, and tissue blocks,
> relating in any way to any of the injuries and/or
> death complained of in the Motion for Judgment or for
> which you make claim.

The request for production of documents defined the term

"[d]ocument" to include "all hospital and medical records,

---

[1] Harlan actually signed the motion for judgment.

[2] Dr. Shulmister, Dr. Bragg, and EPT will hereinafter be referred to as the defendants although only Dr. Shulmister and EPT are appellees before this Court.  The plaintiff nonsuited the action against Dr. Bragg and Sentara Hospitals in December 1999.

. . . reports . . . in the possession, custody or control of plaintiff and plaintiff's agents . . . ."

Signed by Flora as attorney of record, the plaintiff's response to that request for production of documents stated that "[m]edical records [are] available for inspection at the offices of Harlan & Flora, P.C. on reasonable notice." Flora and the Firm acknowledge that the medical records that Flora made available for inspection did not include an "AUTOPSY PROTOCOL" (autopsy report), dated November 19, 1997, by L. J. Dragovic, M.D., the chief medical examiner for Oakland County, Michigan.

After the decedent died in March 1996, his body was transported out of state for interment. Approximately 18 months later, his family arranged to have the body exhumed so that an autopsy could be performed. Dr. Dragovic conducted that autopsy and concluded that the cause of death was "ACUTE CORONARY INSUFFICIENCY due to LEFT ANTERIOR DESCENDING CORONARY ARTERY MYOCARDIUM BRIDGING ANOMALY." That conclusion is allegedly different from the cause of death listed on the decedent's death certificate. After receiving the results of the autopsy, the decedent's family decided to pursue this medical malpractice/wrongful death action.

3

In March 1999, the circuit court entered a scheduling order that, among other things, directed plaintiff's counsel to identify all expert witnesses by November 30, 1999. The identification was to contain all information discoverable under Rule 4:1(b)(4)(A)(i). In accordance with the scheduling order, Flora timely identified the plaintiff's experts and disclosed the following information:

> Dr. Ljubisa Jovan Dragovic, is a Board Certified Pathologist and is licensed to practice in New York and Michigan. Dr. Dragovic performed an autopsy on [the decedent] on November 18, 1997. He will testify that the cause of death was acute coronary insufficiency due to a left anterior descending coronary artery myocardium bridging anomaly.

The defendants acknowledge that Flora provided them with a copy of the actual autopsy report on December 1, 1999.

The defendants then filed a motion to dismiss. In that motion, they asserted that plaintiff's counsel should have produced the autopsy report earlier in response to the request for production of documents. The defendants claimed that the report and any pathology slides are "crucial pieces of evidence in this case which were specifically requested for in discovery, and withheld from the defendants . . . ." They requested the court to dismiss the case with prejudice or, in the alternative, to exclude all evidence regarding the autopsy, including Dr.

4

Dragovic's testimony, and to grant a continuance of the trial date and an extension of the deadline for identification of their expert witnesses.

After hearing argument of counsel, the circuit court issued a letter opinion on February 4, 2000, denying the motion to dismiss or to exclude the testimony of Dr. Dragovic. However, relying on Code § 8.01-271.1, and Rules 1:4 and 4:1(b)(6), the court sua sponte awarded sanctions jointly and severally against Flora and Harlan in the amount of $2,000 to compensate the defendants for fees and costs in pursuing the motion to dismiss, and in the amount of $10,000 "as punishment for the willful and deliberate actions of plaintiff's counsel." The court concluded that the autopsy report was a "medical record" that should have been disclosed in response to the request for production of documents.[3]

Flora and Harlan moved the court to reconsider the imposition of sanctions. In a subsequent letter opinion, the court stated that the motion to reconsider was "totally without merit." The court then entered an order in

---

[3] In its letter opinion, the circuit court also referenced a request for production of documents filed by Sentara Hospitals. The plaintiff responded to that request by stating that "[t]he original records are in the exclusive possession of this defendant."

5

accordance with its first letter opinion. However, in a subsequent amended order, the court vacated its prior order, and for the reasons stated in its letter opinion of February 4, 2000, ordered an award of sanctions in the total amount of $12,000 against Flora and the Firm, jointly and severally. The only significant difference between the court's first order and its amended order is that, in the amended order, the court did not impose any sanctions against Harlan. Flora and the Firm now appeal the award of sanctions against them.[4]

## ANALYSIS

In reviewing a trial court's imposition of a sanction, "we apply an abuse-of-discretion standard." Oxenham v. Johnson, 241 Va. 281, 287, 402 S.E.2d 1, 4 (1991). We judge Flora's conduct by an objective standard of reasonableness in order to determine whether, after reasonable inquiry, he could have formed a reasonable belief that the response to the request for production of

---

[4] Dr. Shulmister and EPT filed a second motion to dismiss, alleging that the plaintiff had withheld additional evidence that should have been disclosed in a supplemental request for production of documents. We will not consider that motion in this appeal because it was filed after the circuit court entered its amended order awarding sanctions against Flora and the Firm.

The circuit court eventually dismissed this case with prejudice upon the representation of the parties that all claims against Dr. Shulmister and EPT had been settled.

6

documents, which omitted the autopsy report, was well grounded in fact, and warranted under existing law or by a good faith argument for the extension, modification, or reversal of existing law. Code § 8.01-271.1; Nedrich v. Jones, 245 Va. 465, 471-72, 429 S.E.2d 201, 204 (1993); Tullidge v. Board of Supervisors, 239 Va. 611, 614, 391 S.E.2d 288, 289-90 (1990). This standard does not require that we decide that Flora's response was actually warranted by existing law. Gilmore v. Finn, 259 Va. 448, 467, 527 S.E.2d 426, 436 (2000). " '[T]he wisdom of hindsight should be avoided' in applying the appropriate objectively reasonable standard of review." Id. (quoting Tullidge, 239 Va. at 614, 391 S.E.2d at 290).

Flora and the Firm contend that the circuit court erred in concluding that they had violated Code § 8.01-271.1, and Rules 1:4 and 4:1(b)(6) by failing to include the autopsy report in the plaintiff's response to the request for production of documents.[5] Summarily stated,

---

[5] On appeal, the defendants agree that Flora and the Firm did not violate Rule 1:4. They also acknowledge that Rule 4:1(b)(6) was not in effect when Flora served the plaintiff's response to the request for production of documents. Thus, that rule has no application to the present case. Hence, we will consider only Code § 8.01-271.1 in determining whether the circuit court abused its discretion in awarding sanctions against Flora and the Firm.

their position is that the autopsy report was not discoverable pursuant to the request for production of documents made under the provisions of Rule 4:9 because the report contains the facts known and opinions held by the plaintiff's expert, Dr. Dragovic.  Thus, Flora and the Firm argue that the autopsy report was an expert report discoverable only pursuant to the provisions in Rule 4:1(b)(4) and/or the court's scheduling order.

On brief, the defendants state that "[t]he dispositive factor for this appeal is that the defendants' discovery request encompassed the autopsy report."  Based on the definition of the term "[d]ocument" to include "reports" and the request to produce "documents . . . pertain[ing] to [a]ll medical reports and records," they argue the autopsy report fell within the scope of the requested documents. The defendants further assert that Flora had an affirmative

---

In pertinent part, Code § 8.01-271.1 provides that the signature of an attorney on any pleading, written motion, or other paper of a party "constitutes a certificate . . . that (i) [the attorney] has read the . . . paper, (ii) to the best of [the attorney's] knowledge, information and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and (iii) it is not interposed for any improper purpose, such as to harass or to cause unneccesary delay or needless increase in the cost of litigation."  If an attorney signs a paper in violation of this rule, "the court, . . . upon its own initiative, shall impose . . . an appropriate sanction."  Code § 8.01-271.1.

8

obligation under Rule 4:9(b) to file an appropriate objection if he wished to claim that the autopsy report was not discoverable under Rule 4:9.

Contrary to the position taken by the defendants, we do not believe that the dispositive inquiry is whether the autopsy report was, in fact, encompassed by their request for production of documents. Rather, we are convinced that the appropriate question is whether, after reasonable inquiry, Flora and the Firm could have formed a reasonable belief that the autopsy report is an expert report discoverable only pursuant to Rule 4:1(b)(4) and the court's scheduling order. We answer that question in the affirmative.

The decedent's family obtained the autopsy approximately 18 months after the decedent's death for the purported purpose of determining whether a cause of action for medical malpractice/wrongful death was warranted. The report prepared by Dr. Dragovic clearly contained the facts learned by him through conducting the autopsy and his opinion as to the cause of death. Applying the objective standard of reasonableness, we conclude that Flora could have formed a reasonable belief that the autopsy report contained "facts known and opinions held by [an] expert[], . . . developed in anticipation of litigation" and was thus

an expert report.  Rule 4:1(b)(4).  As an expert report, it is discoverable only under Rule 4:1(b)(4).

The scope of documents subject to production under Rule 4:9 is limited to documents that "constitute or contain matters within the scope of Rule 4:1(b)."  Rule 4:9(a).  The "scope of discovery" under Rule 4:1(b) with respect to the "facts known and opinions held by experts . . . in anticipation of litigation" is restricted by the proviso that such facts and opinions "may be obtained only" by following the procedures set forth in subsections (A), (B), and (C) of Rule 4:1(b)(4).  Thus, a litigant cannot use a request for production of documents under Rule 4:9 to circumvent the exclusive method established in Rule 4:1(b)(4) for discovering expert opinions.  Cf. United States v. International Bus. Machs. Corp., 72 F.R.D. 78, 81 (S.D.N.Y. 1976) (documentary production and deposition questions considered in light of constraints delineated by Federal Rules of Civil Procedure dealing with expert opinions); Pearl Brewing Co. v. Jos. Schlitz Brewing Co., 415 F. Supp. 1122, 1136 (S.D. Tex. 1976) (discovery controversy regarding request for production of documents under F.R.C.P. 34 governed by F.R.C.P. 26(b)(4)(B) pertaining to discovery of facts known or opinions held by expert).  The general provisions of Rule 4:9 cannot take

precedence over the more specific requirements of Rule 4:1(b)(4). See Natrella v. Board of Zoning Appeals, 231 Va. 451, 461, 345 S.E.2d 295, 302 (1986) ("specific statutory provision takes precedence over a general provision addressing the same subject"); see also Quadrini v. Sikorsky Aircraft Div., United Aircraft Corp., 74 F.R.D. 594, 595 n.1 (D. Conn. 1977) (specific provision of the Federal Rules of Civil Procedure governing discovery of expert opinions controls over more general provisions pertaining to discovery). Furthermore, given the reference in Rule 4:9 to the scope of discovery set forth in Rule 4:1(b), we conclude that Flora could have formed a reasonable belief that he was not required to file an objection under Rule 4:9(b) to the request for production of documents.

We reiterate that, in assessing the propriety of the imposition of sanctions, the test is not whether the autopsy report was, in fact, a report containing the facts known and opinions held by an expert, or whether it was a "report" encompassed by the request for production of documents. In other words, we do not decide whether Flora's response to the request for production of documents was "actually warranted" under the rules governing discovery. Gilmore, 259 Va. at 467, 527 S.E.2d at 436.

11

However, we do conclude that Flora and the Firm, after reasonable inquiry, could have formed a reasonable belief that the autopsy report was not discoverable under Rule 4:9 but, instead, discoverable only in compliance with the provisions of Rule 4:1(b)(4) and the circuit court's scheduling order. As previously noted, Flora and the Firm timely complied with that order.

## CONCLUSION

For the reasons stated, we conclude that the circuit court abused its discretion by imposing sanctions against Flora and the Firm. Even though "we accord deference to the decision of the [circuit] court in this case and will reverse that decision only if the court abused its discretion," this Court does not "simply rubber stamp every discretionary decision of a trial court." Walsh v. Bennett, 260 Va. 171, 175, 530 S.E.2d 904, 907 (2000). Accordingly, we will reverse the circuit court's judgment imposing the monetary sanctions against Flora and the Firm.

Reversed and final judgment.