# CIRCUIT COURT OF AUGUSTA COUNTY

Hershey Chocolate
of Virginia, Inc.

v.

Augusta County

Case No. CL14002172-00

By Judge Victor V. Ludwig

August 21, 2015

On December 12, 2014, Hershey Chocolate of Virginia, Inc. (Hershey), filed its Application for Relief from Erroneous Assessment of Real Property Taxes (the Application), asking that the Court correct the assessment for the year 2014 on its real estate in Stuarts Draft, Virginia (the Property). On December 31, 2014, the defendant, Augusta County, filed a Demurrer, or in the alternative, a Motion for a Bill of Particulars (the MBOP). These two responses were filed as a single pleading, but because they address different issues, I will treat them as discrete pleadings.

Related to those pleadings, but raising different issues, are Hershey's Motion for Leave To Amend the Application (the Motion To Amend), which included a request for reimbursement of fees and costs related to its having to file the Motion To Amend.

In support of their various pleadings, Hershey filed a Memorandum in Opposition to the Demurrer (Hershey's Memo), and the County filed a

Memorandum in Support of the Demurrer, or in the alternative, Motion for a Bill of Particulars, and in Opposition to Plaintiff's Motion for Leave To Amend (the County's Memo).

The parties argued the issues on June 16, 2015.

## I. *Demurrer*

To put the Demurrer in context, it is helpful to ascertain what Hershey has to prove and then to determine if it has alleged facts sufficient to support the necessary components of its claim. Hershey's claim is grounded in Va. Code Ann. § 58.1-3984, which affords a taxpayer the opportunity file a petition in the circuit court asking for relief from an assessment. Specifically, with respect to the case which Hershey has filed (which involves real estate), the statute provides, in part:

> [T]here shall be a presumption that the valuation determined by the assessor or as adjusted by the board of equalization is correct. The burden of proof shall be on the taxpayer to rebut such presumption and show by a preponderance of the evidence that the property in question is valued at more than its fair market value or that the assessment is not uniform in its application, and that it was not arrived at in accordance with generally accepted appraisal practices, procedures, rules, and standards as prescribed by nationally recognized professional appraisal organizations such as the International Association of Assessing Officers (IAAO) and applicable Virginia law relating to valuation of property . . . .

Va. Code Ann. § 58.1-3984(B). The burden is stated in the conjunctive; the taxpayer must rebut the presumption and "show" certain things. As a practical matter, if the taxpayer shows those things on the far side of the conjunction, it does rebut the presumption. In order to properly plead a case pursuant to the statute, Hershey must allege facts sufficient to support the claims: (1) that the property is valued at more than its fair market value, or (2) that the assessment is not uniform, and, in either event, (3) that the value or the assessment was not arrived at in accordance with generally accepted appraisal practices.

My conclusion as to what the taxpayer must prove appears to be different from the holding in *West Creek Assoc., L.L.C. v. County of Goochland*, 276 Va. 393 (2008), but that case was decided on the basis of the statute as it was prior to its amendment in 2011. In my opinion, expressed in *Staunton Mall Realty Management, L.L.C. v. Augusta County Board of Supervisors*, Case No. CL13002412-00█ I concluded that the statute significantly impacted the *West Creek* decision in one particular — the requirement to prove that

the value or the assessment was not arrived at in accordance with generally accepted appraisal practices.

## A. *Summary of Facts and Inferences from the Application*

Addressing only the specific weaknesses that the County asserts are the basis of its demurrer, Hershey alleges that:

a. Its plant was originally built in 1982. (App. ¶ 5.)

b. The Property consists of 305.944 acres. (App. ¶ 6.)

c. "The values of large manufacturing plants similar in age and size to the [Property] have been predominantly stagnant or declining for nearly twenty years . . . [as a] result of numerous competitive market factors in the global economy." (App. ¶ 7.)

d. "[M]any domestic manufacturers have consolidated and/or closed . . . or have relocated manufacturing operations outside the United States." (*Id.*)

e. "[A]vailable manufacturing properties exceeds demand, placing negative pressure on the market value of manufacturing properties, particularly older and larger limited use manufacturing properties located in rural areas." (*Id.*)

f. "The true fair market value of the Property was no greater than $15,000,000 for the 2014 tax year, with the exact amount to be proved at trial." (App. ¶ 9.)

g. The County assessed the Property at $31,698,200 for the 2014 tax year. (App. ¶ 10.)

h. "In addition to assessing the Property at a value substantially greater than fair market value, the County's assessment of the Property is not uniform in its application. Moreover, the County committed manifest error by employing improper appraisal methodologies and/or totally disregarded controlling evidence in making the assessment." (App. ¶ 11.)

For the purposes of this motion, the Court accepts as true the material facts that Hershey has pleaded as well as facts that are fairly implied or inferred from its allegations. *See, e.g., Fox v. Custis,* 236 Va. 69, 71 (1988).

## B. *Standard for Review of the Demurrer*

A demurrer tests whether a complaint states a sufficient basis to establish a cause of action for which relief can be granted. *Grossmann v. Saunders,* 237 Va. 113, 119 (1989). In addition, a demurrer does not test the strength of the proof, but the legal sufficiency of the facts alleged in the pleadings. *Eagle Harbor, L.L.C. v. Isle of Wight Cnty.,* 271 Va. 603, 611 (2006). "A demurrer admits the truth of all properly pleaded material facts," and "[a]ll reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Kellermann v. McDonough,* 278 Va. 478, 484 (2009). However, "a demurrer does not admit the correctness of the pleader's conclusions of law." *Fox,* 236 Va. at 71 (1988) (citations

omitted). As long as the complaint contains sufficient allegations to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993) (citation omitted). At the same time, to survive a demurrer, a pleading must be made with "sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." *Eagle Harbor, L.L.C.*, 271 Va. at 611 (quoting *Moore v. Jefferson Hosp., Inc.*, 208 Va. 438, 440 (1967)). And, where the plaintiff's allegations, if true, are sufficient to state a cause of action, the demurrer should be overruled. *CaterCorp,* 246 Va. at 29.

## C. *Bases for the Demurrer and Analysis*

The County devotes a fair amount of its Demurrer to articulating the burden of proof and the presumption that the County's assessment is correct. Neither has a place in a demurrer; both are matters for trial, so, except for this observation, I will not further address the County's reliance on or assertion of those issues.

As I noted above, in order to prevail, Hershey must prove (or at this stage sufficiently allege): (1) that the property is valued at more than its fair market value, or (2) that the assessment is not uniform,[1] and, in either event, (3) that the value or the assessment was not arrived at in accordance with generally accepted appraisal practices. To the extent that I can identify the complaints that the Demurrer articulates to a specific component of a required allegation, I will address those in the context of the elements of the cause of action. As to other complaints, I will address them in a less specific category.

### 1. *Fair Market Value*

I am not certain that the Demurrer even attacks the Application on this issue. It uses the term "fair market value" only in its observation that the taxpayer has the burden to rebut the presumptively correct assessment "by establishing that the real property in question is assessed at more than fair market value" (Dem. ¶ 2), but it does not state that Hershey has failed to make those allegations. As I noted above, the law is that the County and the Court are to accept "the truth of all properly pleaded material facts," and "[a]ll reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading." *Kellermann,* 278

---

[1] The reason that these two components of the complaint are in the disjunctive is that either can stand alone. If the taxing authority assesses the real estate at more than its fair market value, the taxpayer is aggrieved, and that is so whether or not the taxing authority similarly over-assesses all other properties uniformly. If the taxing authority taxes the real estate in a fashion that is not uniform with similar properties, the taxpayer is aggrieved even if the property is assessed at its fair market value.

Va. at 484. The County, in the Demurrer, does not have that advantage. On the contrary, "[n]o grounds other than those stated specifically in the demurrer shall be considered by the court." Va. Code Ann. § 8.01-273; *see TC MidAtlantic Dev., Inc. v. Commonwealth,* 280 Va. 204, 214 (2010). Accordingly, it is neither the obligation nor the inclination of the Court to tease out of the language of the Demurrer an objection not clearly stated.

Not until the County's Memo does it refer to Hershey's allegation of the actual fair market value, but (a) that is too late, and (b) its arguments at the demurrer stage are simply unpersuasive. Hershey alleges that the fair market value does not exceed $15,000,000, and it is not required that Hershey state the precise fair market value at the pleading stage. In addition, the County's concern about Hershey's reference to a settlement of a previous claim as evidence of the fair market value of the Property is not an issue properly raised by demurrer. That is a question of the admissibility of evidence which I suspect will be addressed either in a motion *in limine* or at trial.

Assuming that I have overlooked language in the Demurrer that clearly raises this issue, as Hershey argues, in a case similar to this, the Circuit Court of Fairfax County found that the applicant alleged sufficient facts because, "[a]fter declaring the value at which the Board assessed the property from 1987 through 1990, [the applicant] alleges the proper fair market value for those years, each of which falls well below the assessed value." *Norton v. Fairfax Cnty. Bd. of Supervisors,* 27 Va. Cir. 318-19 (Fairfax Cnty. 1992). I recognize that *Norton* is not binding on this Court, but I cite it for the narrow holding to which I refer because I find it persuasive.

In light of the amendments to the statute since the *Norton* case was decided, I do not accept its holding that an allegation that the taxing authority assessed a property at more than fair market value, coupled with an allegation of the actual fair market value, standing alone, suffices to withstand a demurrer.

Hershey clearly alleges that it is aggrieved, that the County assessed the Property at $31,698,200 for the 2014 tax year, but that its fair market value was no greater than $15,000,000 for that year, "with the exact amount to be proved at trial." Those are factual allegations, subject to being proven at trial. Assuming the facts are true (and that is the standard when examining a demurrer), Hershey has alleged sufficient facts to survive a demurrer on the issue of the Property being assessed at a value greater than fair market value.

### 2. Uniformity of Assessment

The County alleges that Hershey offers no supporting factual allegations that the assessment of the Property was not uniform in its application. (Dem. ¶ 5.) Because this is one of the two disjunctives in the statute and because Hershey has met the requirement of the other (the allegation

that the Property was assessed at more than fair market value), I will not address this issue in detail. Even were I obliged to do so, at this stage of the proceedings, I find that the allegation is sufficient. I agree that the allegation is as spare as it could possibly be, but I adopt the reasoning that I describe in the following section.

### 3. *The Value or the Assessment Was Not Arrived at in Accordance with Generally Accepted Appraisal Practices*

The County alleges that Hershey offers no supporting facts in support of its allegation that the County employed improper appraisal methodologies. (Dem. ¶ 6.)

Until the statute was amended in 2011, the inquiry into methodology used by the taxing authority was a product only of case law. In *West Creek Assoc., L.L.C. v. County of Goochland,* 276 Va. 393 (2008) (decided prior to the amendment to Va. Code Ann. § 58.1-3984), the Court carefully examined the question of the methodology employed by the taxing authority in the context of its previous rulings in which the issue had been addressed. The Court concluded that proof of improper methodology was a means of proving manifest error, but it was neither a necessary nor the sole means of doing so.

> This survey of the Court's decisions leads to the conclusion that the circuit court erred by holding that, in order to show manifest error, a taxpayer must prove what information the taxing authority considered and how it arrived at the assessment in question, *i.e.,* its methodology. It is correct that, in the majority of our cases, the dispositive issue was whether the taxing authority had utilized an improper methodology in setting the assessed value of real property. But, we have never explicitly held that manifest error cannot be established simply by evidence showing that real property is assessed at more than its fair market value. In all cases, however, a taxing authority's assessment is presumed to be correct, *Keswick Club,* 273 Va. at 136, and the taxpayer has the burden of proof "to show that the property in question is valued at more than its fair market value or that the assessment is not uniform in its application, or that the assessment is otherwise invalid or illegal."

*Id.* at 413-14 (quoting Va. Code Ann. § 58.1-3984(A)). Given the statute then in effect and the case law construing it, there was one instance in which improper methodology was required, and that arose when the taxpayer attempted "to prove manifest error solely by showing a significant disparity between fair market value and assessed value." *West Creek,* 276 Va. at 414.

The statute was modified in 2011 to add an entirely new paragraph relating solely to real property. That amendment added to the taxpayer's burden the additional requirement that it show that the assessment "was not arrived at in accordance with generally accepted appraisal practices . . . ." Va. Code Ann. § 58.1-3984(B). The question at the demurrer stage is whether Hershey is required to allege specifically how the assessor erred in the methodology it employed.

As I noted above, so long as "a complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand a demurrer." *CaterCorp*, 246 Va. at 24. It is a close (and arguable) question whether an allegation that the County has employed improper appraisal methodologies is a conclusion of law or suffices, standing alone, as an allegation of fact. I understand the County's reliance on *Pulte Home Corp. v. Parex, Inc.*, 265 Va. 518 (2003), and the proposition that a litigant may not merely parrot the statute to state a claim. However, in that case, the defendant (whose counterclaim was attacked by a demurrer), should have known and could have alleged some facts that put flesh on the statutory skeleton; here, the matter is complicated by the very practical issue of how Hershey can know the specifics of the assessor's methodology in order to plead it with particularity in light of the fact that that is information which may largely (perhaps exclusively) be available through discovery.

I am not keen on authorizing fishing expeditions, but, as the Supreme Court of Virginia noted in *Walsh v. Bennett*, 206 Va. 171, 176 (2000): "We have often warned of the dangers of 'short circuiting' litigation because in doing so, a trial court 'deprives a litigant of his day in court and deprives this Court of an opportunity to review a [more] thoroughly developed record on appeal.'" (Citations omitted.)

### 4. *Miscellaneous Category*

The County alleges that Hershey does not allege facts that "evince that the County committed manifest error or totally disregarded controlling evidence." (Dem. ¶ 3.) As in *Staunton Mall, supra*, "the concept of 'manifest error' has never appeared in any iteration of the statute. It first appears in *Norfolk v. Snyder*, 161 Va. 288, 292-93 (1933), in which the Court adopted it from a secondary source: 'Conclusions of a board of commissioners will not be disturbed unless it appears that there has been a manifest error in the manner of making the estimate, or that evidence which should be controlling has been disregarded. Cooley on Taxation, section 1618, note, p. 3235.'" With some redundancy, the County further alleges that Hershey offers no supporting facts in support of its allegation that the County totally disregarded controlling evidence. (Dem. ¶ 6.) Nevertheless, the two issues that the Demurrer raises are "manifest error" and "controlling

evidence." With respect to both terms, the most recent references to them in the appellate courts of the Commonwealth appear in *West Creek*, in which the Court observed that that "the taxpayer must show manifest error in the manner of making the estimate, or that evidence which should be controlling has been disregarded." 276 Va. at 403. Hershey alleged that "the County committed manifest error by employing improper appraisal methodologies . . . ." (App. ¶ 11.)

In *West Creek*, however, as in all other tax assessment cases using the term, the reference to "manifest error" is a reference to what the taxpayer must prove, not to what it must plead. The term, never well defined, more nearly articulates a vehicle for rebutting the presumption of correctness than a requirement of pleading. Moreover, proving that the taxing authority committed manifest error by using improper methodologies is only one alternative to rebut the presumption, so it is of little consequence whether Hershey pleaded facts to support the proposition. Even so, Hershey did plead that the County employed improper appraisal methodologies, which is an approved mechanism for proving "manifest error."

With respect to "controlling evidence," Hershey cites *Norton* for the proposition that "a taxpayer 'need not specifically plead' that . . . a taxing authority 'totally disregarded controlling evidence when it assessed the property.'" *Norton*, 27 Va. Cir. at 319. (Hershey's Memo ¶ 21.) Even if *Norton* had precedential significance for this Court, the continuing vitality of the decision in that particular is not without ambiguity because that case specifically relied on Va. Code Ann. § 58.1-3984 as it was worded prior to the amendment in 2011. Even so, Hershey is correct.

The concept of "controlling evidence" is not statutory; it was introduced by case law, and it is a mechanism for the plaintiff to rebut the presumption of correctness. As with "manifest error," proving that the taxing authority disregarded controlling evidence is only one alternative to rebut the presumption, so it is of little consequence whether Hershey pleaded facts to support that theory.

The County alleges that the Application "fails to even address the value of the real property other than that which is the footprint of the Hershey Plant, only allegedly 132 acres of a 305.944 acre site." (Dem. ¶ 4.) That observation is factually inaccurate. The Application defines the "Property" as "305.944 acres, of which approximately 132 acres are used to support the operation of the Hershey Plant." (App. ¶ 6.) In paragraphs 9 and 10, respectively, the Application alleges the fair market value of the Property and its assessed value. Clearly, Hershey is referring to the Property, not only to a part of it.

Referring to Hershey's allegations that factors in the global economy affect the Property's fair market value, the County alleges that the Application "fails to identify any such factors or market data in the County." (Dem. ¶ 4.) Hershey is not required to offer evidence at the pleading stage;

the allegations, general as they are, are clearly in support of its assertion that the issue of the fair market value of the Property is less than the assessment.

## C. *Conclusion*

The Court concludes that Hershey has stated a cause of action, and I overrule the Demurrer.

## II. *Bill of Particulars*

I will not address the parties' arguments regarding unpublished cases, their import or their precedential value, except to say that (a) if it is not precedent, it is not precedent, and (b) if it does not offer a rationale, it is not something on which I will rely as instructive, much less persuasive. Moreover, in my view, the question is more basic than that. Running the very real risk of being criticized (but I hope not reversed) on this issue, I suggest that the notion of a Bill of Particulars in civil cases can be something of an anachronism, particularly if the Court has already concluded that a complaint survives a demurrer.

Rule 3:7(a) of the Rules of the Supreme Court of Virginia gives the trial court discretion to order a bill of particulars "to amplify any pleading that does not provide notice of a claim . . . adequate to permit the adversary a fair opportunity to respond or prepare the case." Rule 3:7(b) authorizes the trial court to strike "[a] bill of particulars that fails to inform the opposing party fairly of the true nature of the claim . . . ." The negative inference is that a bill of particulars that does "*inform the opposing party fairly of the true nature of the claim*" is a sufficient amplification for the purposes of Rule 3:7(a). (Emphasis added.) Recall, as I noted above, that a complaint survives a demurrer so long as it "contains sufficient allegations to *inform a defendant of the nature and character of the claim* . . . ." *CaterCorp*, 246 Va. at 24 (emphasis added). Couple that with the current expansive rules of discovery that did not exist when the Bill of Particulars was the primary vehicle for discovery, and the conclusion that sustaining a demurrer is generally the equivalent of finding that a Bill of Particulars is not necessary.

I understand that *Alexander v. Kuykendall*, 192 Va. 8, 14 (1951), held that, "even though a declaration or motion for judgment may be imperfect, if it is so drafted that the defendant cannot mistake the true nature of the claim, the trial court should overrule the demurrer, and, if defendant desires more definite information, or a more specific statement of the grounds of the complaint, he should request the court to require plaintiff to file a bill of particulars." *Kuykendall* is a curious case. Initially, it states that "the unmistakable impression conveyed [by the pleading] is that defendant made false representations to plaintiff; that plaintiff believed the false representations and acted thereon to her detriment." *Id.* Notwithstanding the "unmistakable impression," the Court nevertheless found the pleading

defective because it did "not expressly allege that [the plaintiff] believed or relied on the representations." *Id.* "Defective as it is, it informs defendant of the true nature, though not the particulars, of plaintiff's claim." *Id.* That is difficult to square with the modern notion that, if a pleading "contains sufficient allegations to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof." *CaterCorp,* 246 Va. at 24.

However difficult it is to reconcile the language in *Kuykendall* with more recent cases without exalting form over substance, courts in the Commonwealth continue to cite *Kuykendall* for its holding (indeed, it is cited in *CaterCorp.*); still, it, the cases on which it relies, and those following it, are generally distinguishable from the case at bar. In *Kuykendall* (and most of its predecessors and progeny), the plaintiff bracketed, but did not put rounds squarely on, the target of a necessary component of its cause of action. What the plaintiff in *Kuykendall* (and others) was saying was clear (by inference); she just did not say it very clearly (by express language). In the case at bar, Hershey did not allege, for example, that the County assessed similar properties but with different results; one might infer from that that Hershey was alleging that the appraisal was not uniform, but that is not quite precise. Hershey did not allege that the County used only two of the three standard appraisal methods; again, one might fairly infer from that that Hershey was alleging that the County had used an improper methodology, but that is not what it says. In each instance, the factual allegation is more precise, but in neither instance does the statement clearly allege the specific component of the cause of action. In this case, it is not that Hershey has failed to make the specific allegations necessary to support its cause of action (with respect to uniformity and methodology), but it has not alleged specific facts to support those fundamental allegations.

I am not unmindful that the Supreme Court of Virginia has perpetuated the Bill of Particulars in its Rules, and there are instances in which it may still be appropriate to order one, even in the face of a demurrer that has been overruled. That is not so in this case, however.

I deny the MBOP, confident that the issue can be squarely joined through the discovery devices afforded the litigants through the Rules of the Supreme Court of Virginia.

### III. *Motion To Amend*

The only significant difference in the Application and the amended application proposed by the Motion To Amend is that, in the latter, Hershey seeks redress for the tax year 2015, as well as 2014.

Rule 1:8 of the Rules of the Virginia Supreme Court provides that "[l]eave to amend shall be liberally granted in furtherance of the ends of justice." The decision to grant leave to amend "rests within the sound discretion of the circuit court." *Peterson v. Castano,* 260 Va. 299, 302 (2000). Hershey

argues that permission to amend the Application will not prejudice the County because the request has been made so early in the litigation process and involves the same assessment under attack in the original Application. (Motion To Amend ¶ 11.) The very early stage of the litigation, the nature of the amendment that Hershey proposes, and the stated purpose of the amendment make it difficult for the Court to find a reason to not grant Hershey's motion, and the County certainly does not provide one.

The County has provided no reasoning to support its opposition to the Motion To Amend other than the obscure comment that the "Amended Application does not address the issues raised by the [County] in its Demurrer . . . ."[1] Beyond that, the County's response only addresses whether the Court should award Hershey costs and fees relating to its Motion To Amend. (County's Memo p. 6.)

The Court grants Hershey's Motion To Amend. Recognizing that the County may deem it necessary to preserve the points for appeal (if any appeal is necessary), the County may choose to re-file its Demurrer and MBOP to the amended Application. However, given that the only change in the amended Application is the addition of a request for relief for tax year 2015, the Court cautions the County that, while it might want to restate its original arguments for the record (and only on paper), I will not reconsider any argument which I have already addressed, but will limit any additional consideration of a demurrer to issues specifically related to the expanded request for relief.

### IV. *Costs and Fees*

Hershey complains that the County declined to consent to its filing an amended application and that the Court should award it fees and costs associated with preparing a motion and arguing the issue to the Court.

Without going into facts (there were no facts offered at the hearing), but relying, perhaps improperly, on the pleadings, both parties engaged in some curious conduct. Hershey appropriately sought to amend its pleading (and before this case gets to trial, it may want to do so again) and asked the County to consent. Having received the Demurrer, Hershey, by then intending to amend the Application, suggested to the County that it would "amend the Application in an effort to address the County's concerns if the County [would] agree to allow Hershey to add the 2015 assessment . . .

---

[1] I hardly understand the comment, much less credit it as an argument. The purpose of the amendment was not to address the Demurrer, which Hershey believed to be meritless, so it is not surprising that it did not attempt to cure what it did not deem to be defective. Given the nature of the proposed amendment, the more expeditious course by the County would have been not to resist it, but to have the amended Application filed, then refile its Demurrer (or, by agreement and order, adopted it to apply to the amended application) and argue the issues as they applied to the amended application. I must be missing some subtle strategy or tactic that is of a consequence I cannot discern.

without requiring a motion for leave to amend." (Letter from Hershey to the County, dated February 3, 2015.) (There is no indication that Hershey sent a copy of the proposed amendment.) The County responded that it wanted "the Court to consider [the Demurrer's] merits," noting that Hershey's letter "is vague as to how [Hershey] might address [the Demurrer] . . . and vague as to how [Hershey] will amend [the] Application." (Letter from the County to Hershey, dated February 16, 2015.)

This is a first for this Court (at least for this judge sitting on it). I have not had litigants bargain with each other about filing pleadings and then present the failed bargaining process to the Court in support of arguments for or against specific relief. Hershey had a right under the Rules to request leave of the Court to amend its pleading, and the County had a right to resist that, even though the Rules favor the amendment. In this instance, it is not clear (and the proposed amendment does not give any indication) how Hershey intended to "address the County's concerns." It is clear that it ultimately did not do so because the amendment is nearly identical to the Application except for adding a claim for tax year 2015. The County may be criticized, but can hardly be taxed, for failing blindly to endorse a consent order, and that is what Hershey was requesting. I agree, as I noted above, that the most expeditious method of handling the proposed amendment at this early stage would have been for the County to have seen the [hand] writing in the Rule and endorsed a consent order to permit the filing of the amended application, but I am not aware of any authority that the Court has to compel it to have done so.

Accordingly, the Court denies Hershey's request for reimbursement for its attorneys' fees and costs.

## V. *Other Issues*

I am aware that Hershey filed a subpoena *duces tecum* to Axial Advisory Group, L.L.C. (Axial), in response to which the County has filed a motion to quash, and I apologize that I have not addressed that issue in this letter. However, I am sensitive to the time requirements of Va. Code Ann. § 17.1-107, and I know that I am beyond the period allotted. Rather than further delay rendering this much of the opinion, I thought it best to circulate this letter, now, with the assurance that I will be rendering a decision on that last issue, shortly.

September 11, 2015

Supplementing my letter of August 21, 2015, I now address the County's Motion To Quash [Hershey's] Subpoena Duces Tecum to Axial Advisory Group, L.L.C. (the Motion). The subpoena *duces tecum* (the SDT) sent to Axial Advisory Group, L.L.C. (Axial), specifically named Axial employees Lawrence J. Colorito, Jr. and Michael F. Berry, and demanded

all documents in Axial's possession related to two prior challenges to the County's assessment of the Property. Those previous actions (the Prior Cases), based on the tax years of 2006-2013, were settled and dismissed by order of October 7, 2014. The present case is concerned with the 2014 and 2015 tax years.

In the Prior Cases, responding to Hershey's interrogatories regarding the experts whom the County intended to testify, the County filed supplemental answers naming Berry and Colorito, "principals of [Axial]," but qualified (and muddied) its response by stating that "[e]ither or both may be called upon to testify." (Hershey's Mem. in Opp'n to County's Mot. To Quash Subpoena Duces Tecum to Axial Advisory Group, L.L.C., Ex. D. at 2.) However, the County acknowledged that it had not yet received the report. (*Id.* at 3.) Understandably dissatisfied with the substance and the timing of the response, Hershey filed a motion *in limine* to exclude the expert opinions of the two men, and the Court granted that motion by order of September 2, 2014. Shortly thereafter, the parties settled the case.

## I. *Applicable Law*

In general, materials are discoverable if they are relevant to the present case and are not privileged. Va. Sup. Ct. R. 4:1(b)(1). The materials are relevant if "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevant evidence is evidence that has "any tendency to make the existence of any fact in issue more probable or less probable than it would be without evidence." Va. Sup. Ct. R. of Evid. 2:401.

Hershey appears to hurdle the low relevancy bar with ease. Though the tax years at issue are not within the range examined by Colorito and Berry for the previous litigation, Hershey claims that they inspected the Property on July 7, 2014, which would be within one of the tax years of the pending case. (Hershey's Mem. 16.) I recognize that there was no evidence to support that assertion (there was no evidence offered at the hearing at all), but Colorito's and Berry's work in the years even prior to 2014 is not wholly unrelated because Hershey alleges in its Application that the Property and properties like it have been declining in value for several years. (App. ¶ 7.) A multiple year survey of the Property's value right up until the year at issue certainly would tend to make the existence of that fact "more probable or less probable." Va. Sup. Ct. R. of Evid. 2:401.

However, even relevant information is not discoverable if it is privileged. *See* Va. Sup. Ct. R. 4:1(b)(1). The County does not assert attorney-client privilege, but it does assert the documents are privileged as attorney work product. Hershey does address this non-argument in its memorandum, but because the County has not raised it, it is not before the Court. Rule 4:1(b)(3) addresses "documents and tangible things" prepared in anticipation of litigation by an attorney or a consultant of a party of the litigation. That

information is only discoverable "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means." *Id.*

Part of Hershey's request for information clearly implicates Rule 4:1(b)(3) in that it requests a broad scope of "documents"; indeed, each of the four items demanded to be produced includes documents of one character or another. It is not seriously (or at least cannot be sincerely) disputed that Axial was a consultant of the County and that its work in connection with the Property was performed in anticipation of litigation in the Prior Cases. However, Hershey has not shown that it "has substantial need of the materials in the preparation of [its] case and that [it] is unable without undue hardship to obtain the substantial equivalent of the materials by other means." To be sure, it cannot obtain the precise documents produced by Axial or its agents, but the Rule is not so narrowly focused as that. Hershey has not particularized what material it seeks, how that information might be exclusively available from Axial, or that it cannot reproduce a substantial equivalent from other sources.

Hershey argues, however, that the Rule does not apply to testifying experts and cites a staggering range of cases in support of its assertion that the work product doctrine as expressed in Rule 4:1(b)(3) does not protect communications with and information from testifying expert witnesses. (Hershey's Mem. 6-10.) As Judge Wetzel noted in one case that Hershey cites, "[t]here is a sea of authority on this question from which one may pluck a fish to suit one's taste." *Moyers v. Steinmetz,* 37 Va. Cir. 25, 26 (Winchester City 1995). Hershey chose to cast its net mostly in the distant waters of the federal courts and the nearer streams of Virginia Circuit Courts, many of which cases are informative and persuasive, but none of which is precedent for this Court. *See Brown v. Black,* 260 Va. 305, 311 (2000).

The premise of Hershey's argument on this issue is that Berry and Colorito have remained "testifying expert witnesses" even after the settlement of the previous suit. I disagree. Rule 4:1(b)(4)(A) discusses experts "the other party expects to call . . . at trial" or "whose opinion may be presented at trial." The County represented that it does not, at this time, expect to call Axial or any of its principals in this case. Though it is true the County did at one time (apparently) expect to call Berry and Colorito as expert witnesses in the Prior Cases, that designation and any assertion that their opinions would be presented at trial died with the entry of the order sustaining Hershey's motion *in limine,* foreclosing the ability of either Berry or Colorito to testify.

According to one commentator, the disclosure of the subject matter of an expert's evidence "is necessary so that the adverse party can be adequately prepared to refute in court what may be a very technical and

arcane argument." *Bryson on Virginia Civil Procedure,* § 9.03 (4th ed. 2014) (citing *Abujaber v. Kawar,* 17 Va. Cir. 398 (Loudoun Cnty. 1989)). That presumes that the testifying expert is offering an opinion to be refuted in a pending case, not an opinion formulated for one that has ended; that is, if the expert does not testify in the pending case, there is no evidence from her that the adverse party must refute. It was proper for Hershey to discover facts and opinions of Axial and its agents in the Prior Cases in order to prepare for their testimony. But without any anticipated testimony in the present case, it no longer makes sense to categorize Berry and Colorito as testifying experts subject to discovery.

Presuming that Hershey's characterization of Berry and Colorito is accurate (which I conclude it is not), Hershey can only discover their materials by way of an interrogatory to the County, by deposing the experts, or upon a motion to the Court. *See* Va. Sup. Ct. R. 4:1(b)(4)(A). The Supreme Court of Virginia has called these three paths the "exclusive method . . . for discovering expert opinions." *Flora v. Shulmister,* 262 Va. 215, 222 (2001). In *Flora,* curiously uncited by both parties, the trial court imposed sanctions on an attorney who did not produce an autopsy report in response to a Rule 4:9 document request. *Id.* at 219. Although the specific issue decided by the Court was not the issue under consideration here, its decision was explicitly predicated on its unequivocal confirmation that the only way to discover an expert's materials is by one of the three methods described in Rule 4:1(b)(4). *Id.*

The route Hershey has chosen to gather its information is not among these options. Instead, it sought the information by an attorney-issued subpoena, pursuant to Rule 4:9A. Although Hershey properly informed the Court of the issuance of the subpoena by sending a copy to the clerk, that hardly qualifies as a motion which the Court could maturely consider.

It would be accurate to characterize Berry and Colorito as experts described in Rule 4:1(b)(4)(B). That Rule permits Hershey to "discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called a witness at trial." Va. Sup. Ct. R. 4:1(b)(4)(B). Hershey contends that the Rule does not apply because Berry and Colorito "were only and always described as experts who were expected to testify on behalf of the County at trial . . . ." (Hershey's Mem. 11.) However, "what might have been is an abstraction remaining a perpetual possibility only in a world of speculation." T. S. Eliot, "Burnt Norton" in "Four Quartets." The Rule does not speak to what might have been, and the law is rarely content with, or grounded on, speculation.

Each of Berry and Colorito is "an expert who has been retained" by the County. Va. Sup. Ct. R. 4:1(b)(4)(B). The use of the present perfect tense — "an expert who has been retained" — suggests the Rule requires only that the expert has been retained at some unspecified time in the past. But the

expert described in the Rule is also "an expert . . . who is not expected to be called as a witness at trial." *Id.* That phrase is written in the present tense. The Rule then applies to an expert who was retained or specially employed at some indeterminate earlier time but is not presently expected to testify. Both Berry and Colorito are experts who were employed in anticipation of litigation, but presently neither is expected to testify. I understand that that might change. I do not suggest that the County was coy on the issue, but it left open the possibility that Barry and Colorito might ultimately play a part. If so, it may be that the Court will have to reassess this opinion. Whether or not the County has engaged the pair's services as "litigation experts" in the present action is therefore irrelevant to the application of 4:1(b)(4)(B). (*See* Hershey's Mem. 11, n. 6.)

Because of the structure of Rule 4:1(b)(4) and the limiting language in paragraphs (A)(i) and (A)(ii) (referring, respectively, to a person whom a "party expects to call as an expert witness at trial" and a "person . . . identified as an expert whose opinion may be presented at trial"), I am not entirely certain how to interpret *Flora* as it applies to the expert described in Rule 4:1(b)(4)(B) (one who is "not expected to be called as a witness"). One thing that is certain is that the Court did not distinguish the expert described in paragraphs (A)(i) or (A)(ii) from the expert described in paragraph (B) in its broad statement that "a litigant cannot use a request for production of documents under Rule 4:9 to circumvent the exclusive method established in Rule 4:1(b)(4) for discovering expert opinions." *Flora,* 262 Va. at 222. Presumably, that observation would also apply to a subpoena *duces tecum* under Rule 4:9A. It is true that the expert in *Flora* was one identified to testify, but the Court identified the document at issue as one containing "'facts known and opinions held by [an] expert . . . developed in anticipation of litigation' and was thus an expert report." *Id.* (quoting Va. Sup. Ct. R. 4:1(b)(4)). That language comes from paragraph (B), not from paragraph (A). It is also contained in the heading of the Rule, but it is generally the case that courts do not give any effect to headings. "It is well-settled, however, that the words of the statute, not its heading, carry the force of law. The heading of the statute is purely a matter of informative convenience." *Jones v. Division of Child Support Enf., ex rel. Owens,* 19 Va. App. 184, 189 (1994) (citations and punctuation omitted). It is unlikely that the Court was quoting anything other than the Rule itself. From that, I infer that at least one of the exclusive methods, specifically paragraph (A)(iii), applies to an expert described in paragraph (B). It certainly makes sense that methods described would be exclusive. Under Rule 4:1(4)(A)(i), it is the party who bears the cost burden of responding. Both of the other methods implicate paragraph (C), which ensure that the expert receives some compensation for being obliged to respond. Of course, the method which Hershey has pursued does not accomplish that. Hershey has not pursued that method to discover the information.

Regardless of the manner in which *Flora* applies as to the methods of obtaining information from an expert described in Rule 4:1(b)(4)(B), Rule 4 considerably raises the bar that Hershey must o'erleap from mere relevance to a much more substantial showing. Discovery of facts known or opinions held by experts such as these are discoverable only "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." Va. Sup. Ct. R. 4:1(b)(4)(B). That is not exactly the same as a showing required by Rule 4:1(b)(3), that the party "has a substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means," but the two standards are close. Hershey makes an argument as to the relevancy of the requested materials in relation to Rule 4:1(b)(1), but it does not offer any exceptional circumstances preventing it from finding equivalent information elsewhere. Unless it is beyond the capability of Hershey to perform a retro-tax assessment of the Property (and my experience in sitting in cases such as this one tells me that taxpayers do it every time they file an application), no such circumstances exist.

## II. *Conclusion*

First, I find that the information which Hershey seeks is material prepared in anticipation of litigation but that Hershey has not shown that it has a substantial need of the materials. Even if it has, that Hershey has not shown that it is "unable without undue hardship to obtain the substantial equivalent of the materials by other means." Va. Sup. Ct. R. 4:1(b)(3). Assuming (though with no enthusiasm) that Berry and Colorito are expert witnesses of the character Hershey ascribes to them, Hershey has failed to follow the proper procedure to discovery material from them or Axial. Finding them to be experts of the character described in Rule 4:1(b)(4)(B), I further find that Hershey has neither followed the proper procedure to discover the material nor overcome the high standard needed to discover it. Accordingly, I grant the motion to quash.